UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Lakessa Taylor, | ) | CASE NO. 1:20 CV 2507 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| City of East Cleveland, et al. , | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon defendants' Motion for Summary Judgment. (Doc. 17). This case arises out of the termination from employment of plaintiff by the City of East Cleveland. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Lakessa Taylor filed her Complaint against defendants the City of East Cleveland, Michael Cardilli, and Larry McDonald on November 6, 2020. Plaintiff alleges that since her hiring in 2011 as a City of East Cleveland police officer, she has been repeatedly subjected to discriminatory behavior based on her gender, and was ultimately terminated in

1

retaliation for complaining about the unlawful conduct. She sets forth six claims: Count One alleges a state law claim for gender discrimination. Count Two alleges a federal claim for gender discrimination. Count Three alleges a state law claim for retaliation. Count Four alleges a federal law claim for retaliation. Count Five alleges a state law claim for a hostile work environment based on gender. Count Six alleges a state law claim for aiding and abetting discriminatory practices. Counts One, Two, Four, and Five are asserted against the City East Cleveland. Count Three is asserted against all defendants, and Count Six is asserted against defendants Cardilli and McDonald only.

Defendants present the following facts relevant to the claims asserted. Plaintiff was hired by the City of East Cleveland Police Department in November 2011 as a third-grade patrol officer, and later promoted to second and first-level patrol officer. She also served as a School Resource Officer at Heritage Middle School.

In December 2014, plaintiff delivered a letter to Annamaria Smith, the City of East Cleveland human resources director, stating that she felt she had been treated unfairly due to her gender and placed in unsafe situations. Plaintiff outlined numerous incidents that occurred while under the supervision of Sergeant Jeffrey Williams. In a December 18, 2014 memorandum prepared by Ms. Smith, it was noted that Smith immediately began an investigation into plaintiff's allegations. The memorandum further noted that a meeting was held on December 16, 2014, attended by plaintiff, Sergeant Williams, Captain Wheeler, Chief Cardilli, and Smith. All were given the opportunity to speak and respond to the others. Smith set forth her conclusions and noted that the matter had been resolved, but stated that plaintiff should always report perceived harassment without fear of retaliation. (Doc. 17 Ex. 5).

Plaintiff was terminated effective August 2, 2018. The retired Chief of East Cleveland Police Michael Cardilli testified at deposition that plaintiff was fired by the mayor for insubordination. This decision arose out of an incident documented in a June 29, 2018 memorandum from Commander Scott Gardner to Chief Cardilli. The memorandum states the following. On June 27, 2018, Sergeant Holcomb and Commander Gardner discussed the need to relieve Officer Stephenson who had been guarding a prisoner at University Hospital throughout the night. Commander Gardner advised Sergeant Holcomb to have an officer from the School Resource Unit relieve Stephenson. Holcomb advised that he would select the least senior officer of the unit. Commander Gardner was later made aware by Investigator McDonald that he would prefer that Officer King, the least senior, be excused from the assignment because she had other commitments to third parties of the City (in particular, a meeting regarding missing juveniles). Commander Gardner then told McDonald to advise plaintiff to go to the hospital, but McDonald then told Gardner that plaintiff felt that because King was junior to her, plaintiff should not have to go. Commander Gardner told McDonald to let plaintiff know that he was ordering her to relieve Officer Stephenson at the hospital. McDonald subsequently relayed that plaintiff refused to go to the hospital. Commander Gardner then called plaintiff into his office along with Commander Gerhard. The interview was video recorded.[1] Plaintiff stated that McDonald, with whom she did not get along, was singling her out and that King should go to the hospital because she was less senior. Commander Gardner explained to plaintiff that it was he who was ordering her to go. Plaintiff still refused despite being asked by Gardner "at least three different times if it

---

[1] Defendants have submitted a flash drive containing the video recording, but the Court is unable to play the device.

was her prerogative not to obey my order." Gardner then informed plaintiff that she was suspended and would be contacted by the Chief's office at a later time for her hearing. Commander Gardner recommended that plaintiff be sent to a mayor's hearing with two violations of police rules and regulations for her refusal to obey a lawful and ethical order- Obedience to Orders (Class 1 offense) and Neglect of Duty (Class 2 offense). Commander Gardner explained in his recommendation:

> An order given to subordinate personnel must be obeyed. It is the necessary foundation of the chain of command, and although no reason for such an order must be given to the officer, I still attempted to appease Officer Taylor with why I made such an order. She still failed to obey.
>
> It was evident that Officer Taylor understood the order and understood the order to be lawful. Failure to pursue this charge with anything less than the gravest penalty would only open the door to other subordinates picking and choosing which orders they will obey...

(Doc. 17 Ex. 3). At some point thereafter, plaintiff submitted a note to the Chief acknowledging that he must be "extremely disappointed" with her, and that she did not mean to disrespect him, the commander, or the department. She stated that "disorder and disobedience" are not a part of her personality, and she apologized. (*Id.* Ex.2).

Following her termination, plaintiff filed a grievance through the Fraternal Order of Police which was ultimately settled on the following terms: Plaintiff was to be paid $5,000. Plaintiff was permitted resignation in good standing. The City would give plaintiff a neutral job referral. The settlement would have no effect on any EEOC or non-CBA claim. (*Id.* Ex. 6).

Plaintiff filed an EEOC charge on October 24, 2018, and later received a right to sue.

Plaintiff submits her declaration wherein she states the following. Since she was hired as an East Cleveland Police Officer in 2011, she has been subjected to unrelenting discriminatory

behavior due to her gender. For instance, although officers are typically permitted to conduct patrols on their own after six months, plaintiff was not permitted to do so after three years, unlike he male co-workers, and was told by Sergeant Jeff Williams that it was "too dangerous." Williams indicated that female officers were better suited for administrative duties rather than the streets. Although she applied for open positions numerous times in the detective bureau, she was rejected while less qualified males were promoted. Plaintiff was told that she was not a "good fit" for the detective position, and was better suited working with children as a School Resource Officer where she was ultimately assigned. During her time with the East Cleveland police, plaintiff shared a locker room with the males who bragged about their sexual experiences and used demeaning and sexist epithets. At an East Cleveland Police Department holiday party, officer Michael Cardilli, who later became the Chief of Police, was intoxicated and attempted to force plaintiff into his car. Cardilli and Officer Larry McDonald argued over who was going to take plaintiff home for sex. Officers Deaundra Brown and Yashila Crowell witnessed this event. At various times throughout her employment, plaintiff's safety was put in danger by co-workers who intentionally left her in life-threatening situations. For example, on one occasion, plaintiff called for back-up because she was alone on a call for a suspicious vehicle where a homicide had previously occurred. The dispatcher questioned the need for back-up, and did not immediately send a unit. Officer Pearlmutter eventually arrived, but was angry and offered no assistance. Plaintiff later learned that Sergeant Jeff Williams had told the dispatcher to question the need for assistance although male officers were not put in such dangerous situations. Plaintiff formally complained about the gender discrimination and harassment to human resources in December 2014, but it continued. In 2017, Larry McDonald ended his employment with the police

department, and plaintiff was assigned in his place as head School Resource Officer. McDonald returned in April 2018, and was re-assigned to work in the East Cleveland Schools. McDonald told plaintiff that he would not work under a female, and began to undermine plaintiff. Plaintiff complained to Chief Cardilli about McDonald's harassing behavior, but Cardilli told plaintiff to "deal with it" because the police department was a "boys club." Less than a month after complaining to Cardilli, plaintiff was fired in August 2018 as a result of the following incident. Sergeant Holcomb, pursuant to protocol, had ordered the least senior officer, Dominique King, to go to the hospital to relieve another officer who had been guarding a shooting suspect. Officer King was also a School Resource Officer, and had a romantic relationship with McDonald. King refused follow Holcomb's order and said she would go to the hospital only if another supervisor ordered her to go. Sergeant Gerhart ordered her to do so. King then told McDonald that she did not want to go. Plaintiff was in the room with King and McDonald during this conversation. McDonald said he would complete paperwork so that King could accompany him to the school instead, and ordered plaintiff to go to the hospital. Plaintiff told McDonald that he did not have the authority to order her. Plaintiff was then summoned to the office and confronted by Sergeant Scott Gardner and Sergeant Gerhart. Unbeknownst to her, the conversation was video recorded which was against policy. Plaintiff explained that McDonald was not her supervisor and did not have authority to give her orders. Plaintiff again complained about the sexist bullying. But, she was ordered to go to the hospital and "in my frustration and desperation, I did not comply." (pltf. decl.).

This matter is now before the Court upon defendants' Motion for Summary Judgment.

**Standard of Review**

6

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**1) Gender Discrimination (Counts One and Two)**

Counts One and Two allege gender discrimination under Ohio law and Title VII, respectively. The claims may be analyzed together since Ohio's requirements are the same as under federal law. *Russell v. University of Toledo,* 537 F.3d 596 (6th Cir. 2008). In the absence of direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. *Stokes v. Detroit Public Schools*, 807 Fed. Appx. 493 (6th Cir. 2020). Under the *McDonnell Douglas* framework, "the plaintiff faces the initial burden of presenting a prima facie case of unlawful discrimination." *Johnson v. Kroger Co.,* 319 F.3d 858, 866 (6th Cir. 2003). To establish the *prima facie* case, a plaintiff must "show that 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000). "The establishment of a prima facie case creates a rebuttable presumption of discrimination and requires the defendant to 'articulate some legitimate, nondiscriminatory reason' for taking the challenged action." *Kroger*, 319 F.3d at 866 (quoting *Univ. of Cincinnati*, 215 F.3d at 573). Finally, "[i]f the defendant is able to satisfy this burden, the plaintiff must then

'prove that the proffered reason was actually a pretext to hide unlawful discrimination.' " *Id.*; *Stokes v. Detroit Public Schools*, 807 Fed.Appx. 493 (6th Cir. 2020) (citing *Miles v. S. Cent. Human Res. Agency, Inc.,* 946 F.3d 883 (6th Cir. 2020).

The Complaint alleges that the gender discrimination includes: "treating similarly situated male employees more favorably than her; refusing to promote Plaintiff; terminating Plaintiff's employment; and refusing to transfer, re-assign or rehire Plaintiff to her former position or to other open positions for which she was qualified." (Doc. 1 ¶¶ 38, 45). However, plaintiff's brief only addresses plaintiff's termination in discussing her gender discrimination claim.[2]

### (a) the *prima facie* case

It is not disputed that plaintiff is a member of a protected class (female), and suffered an adverse employment action (termination). Defendants concede that she was qualified for her job and performed it satisfactorily. Defendants assert that plaintiff was not replaced, and plaintiff does not dispute this. Thus, the only element in dispute is whether plaintiff was treated less favorably than similarly situated individuals outside the protected class.

Plaintiff must show that "similarly situated non-protected employees were treated more favorably*." Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016). In order to demonstrate that another employee is similarly situated, the plaintiff must show that the other employee is similar to plaintiff in "all relevant respects." *Ercegovich v. Goodyear Tire &*

---

[2] Plaintiff refers to being "repeatedly denied promotion to the Detective Bureau." But, she fails to set forth a specific failure to promote claim. She also refers to the treatment of similarly situated males as part of the prima facie case, which the Court will also discuss there- not as a separate claim of gender discrimination.

*Rubber, Co.,* 154 F.3d 344, 353 (6th Cir. 1998). "The other employee or employees ordinarily 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.' " *Stewart v. Esper*, 815 Fed.Appx. 8, 17 (6th Cir. 2020) (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 364 (6th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). As discussed below plaintiff does not offer any examples of male officers engaging in the same conduct for which she was terminated, i.e., disobeying a direct order.

Plaintiff cites a December 2017 incident wherein male police officer Joseph Marche was found highly intoxicated and passed out in Bratenahl, Ohio in an East Cleveland police car while on duty for the East Cleveland Police Department and carrying his weapon. He refused to exit his vehicle, and the police had to forcibly remove him. He was later convicted of operating a vehicle under the influence and had his driver's license suspended. But, he was only suspended by the East Cleveland Police Department, and not terminated.

In another instance, occurring in October 2019, Officer Larry McDonald released a woman from jail in exchange for a sexual promise, and was only suspended.

Clearly, neither of these officers engaged in the same conduct as plaintiff, ie., disregarding a direct order to do a task. Moreover, defendants present evidence that when the incident with Officer Marche occurred, he was only an auxiliary officer. (Cardilli depo. 54-56). Thus, plaintiff and Marche were not similar in all relevant respects.

Finally, plaintiff maintains that at least five male officers with less experience were promoted to the detective bureau while she was rejected, and she was not permitted to conduct

patrols on her own while her male counterparts were allowed to do so. Neither of these assertions is supported by detailed facts to allow the Court to discern whether plaintiff was being treated differently than similarly situated male officers. However, it is evident that these situations do not involve the same conduct for which plaintiff was terminated. Additionally, with regard to plaintiff's contentions that the male officers could patrol alone, this matter was raised in plaintiff's December 2014 complaint to human resources. It was addressed in the human resources director's response to the complaint.

For this reason, plaintiff fails to establish the *prima facie* case.

**(b) pretext**

Assuming she did establish a *prima facie* case, the burden shifts to defendants to articulate some legitimate, nondiscriminatory reason for terminating plaintiff. Plaintiff contends that defendant has not articulated such a reason. But, defendants easily satisfy this requirement by showing that plaintiff was terminated for failing to obey a direct order from her superior, Commander Scott Gardner, which order plaintiff has not disputed was lawful and ethical. The burden then shifts to plaintiff to demonstrate pretext. Plaintiff may do so "in whatever way [she] sees fit" or by showing the proffered reason had no basis in fact, did not actually motivate the dismissal, or was insufficient to motivate the City of East Cleveland's action. *Stokes v. Detroit Public Schools,* 807 Fed.Appx. 493 (6th Cir. 2020) (citations omitted).

Plaintiff argues that there is "direct evidence" to show that the "supposed reason" for her termination was "unworthy of belief." Regarding direct evidence, the Sixth Circuit has recently summarized:

> In determining the materiality of allegedly discriminatory statements, we consider four factors, none of which are dispositive: "(1) whether the statements were made by a

11

> decision-maker ...; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002)). This is a high bar. For example, we have rejected the idea that telling someone to "retire and make everybody happy" was direct evidence of age discrimination, as retirement does not necessarily refer to someone's age. See *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006).

*Pelcha v. MW Bancorp Inc.,* 988 F.3d 318 (6th Cir. 2021).

Plaintiff points to Sergeant Williams's comments to her that women should not be working in the street, but are better suited to administrative roles and that she would be better working with kids. (pltf. decl.) Not only were these comments not made by a decision maker or related to the decision-making process, but they were not close in time to plaintiff's termination. Although plaintiff does not state when the comments were made, they appear to have pre-dated plaintiff's 2014 complaint to human resources. (pltf. decl.; Doc. 17 Ex. 5). Comments made at least four years prior to the decision to terminate plaintiff cannot be considered direct evidence. *Pelcha v. MW Bancorp Inc.,* 988 F.3d 318 (6th Cir. 2021) (In rejecting proposed direct evidence of discrimination based on comments made more than six months before the plaintiff's termination, the court stated, "We have previously suggested that time spans of six or seven months can be temporally distant.")

Plaintiff also points to Officer Larry McDonald's 2018 statement that he refused to work under a woman. (pltf. decl.). Again, McDonald did not make the decision to terminate plaintiff. The evidence shows that Commander Scott Gardner prepared the memorandum to Chief Cardilli outlining that Gardner gave the order to plaintiff which was disobeyed, and that he recommended her to a mayor's hearing for "the gravest penalty" as a consequence of the two rules violations. (Doc. 17 Ex. 3). The mayor made the ultimate decision. Nor is there evidence that McDonald's

Case: 1:20-cv-02507-PAG Doc #: 22 Filed: 09/27/21 13 of 20. PageID #: 600

comments were related to the decision-making process. In fact, plaintiff's declaration testimony surmises that McDonald favored officer King because he had a romantic relationship with her and, as a result, McDonald told plaintiff to go to the hospital to relieve the officer.

Finally, plaintiff points out that when she complained to Chief Cardilli, who had previously made sexual advances toward her, about McDonald's harassing behavior, Cardilli dismissed her concerns by saying the police department was a "boys club" and just "deal with it." (pltf. decl.). Again, Cardilli was not the decision maker.

For these reasons, plaintiff does not have direct evidence of discrimination to undermine the decision to terminate her. Additionally, plaintiff does not show that her failure to obey Commander Gardner's direct order was insufficient to motivate the decision to terminate her, had no basis in fact, or did not actually motivate the dismissal.

For these reasons, summary judgment is warranted on the gender discrimination claims.

**2) Retaliation (Counts Three and Four)**

Counts Three and Four allege retaliation under Ohio law and Title VII, respectively, which, again, may be analyzed together. *Threat v. City of Cleveland,* 6 F.4th 672 (6th Cir. 2021). As with gender discrimination claims, "A plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a prima facie case under the *McDonnell Douglas* framework." *Ennis v. State of Tennessee*, 835 Fed.Appx. 811 (6th Cir. 2020) (citations omitted). To establish the *prima facie* case, a plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially

13

adverse action. *Id.* (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)). "If the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the materially adverse action." *Id.* (citing *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019)). If the defendant does so, the burden shifts back to the plaintiff to show the reasons given were a pretext for retaliation. *Id.*

Counts Three and Four allege that plaintiff engaged in protected activity when she complained about and opposed defendants' discriminatory conduct, and that defendants retaliated against her by terminating her employment. (Compl. ¶¶ 52, 59). [3]

Defendants argue that plaintiff fails to satisfy the fourth element of her *prima facie* case, i.e., a causal connection between the protected activity and the termination, because plaintiff's written complaint was submitted to the human resources department in 2014 and she was not terminated until 2018. On this basis, a temporal proximity would be lacking. But, plaintiff argues that she also complained to Chief Cardilli sometime after Larry McDonald returned to the East Cleveland police department in April 2018 about McDonald's sexist remarks and harassing behavior. She was terminated in August 2018. The Court assumes that plaintiff satisfies the *prima facie* case.

As discussed above, the Court has already determined that plaintiff failed to demonstrate that defendants' legitimate reason for the termination was pretextual. Plaintiff does not address

---

[3] Plaintiff now argues that she has a retaliatory harassment claim, arguing that she experienced increased harassment after complaining, and that she was not promoted because she complained about the sexist behavior. But, the Complaint only alleges that defendants retaliated against plaintiff by terminating her.

pretext in her argument regarding the claims of retaliation and, so, provides no further argument. Although she fails to argue pretext, plaintiff's declaration testimony states that when summoned to the meeting with Commander Gardner and Sergeant Gerhard, she "explained that McDonald is not a supervisor and did not have authority to send me," and she complained about the "sexism and harassment [she] constantly experienced on the job from male officers including officer McDonald." (pltf. decl.). Assuming that plaintiff is arguing that the termination was pretextual and was actually in retaliation for these complaints, the evidence shows otherwise. The evidence establishes that it was Commander Gardner who ordered plaintiff to go to the hospital, not Officer McDonald, and she refused. It was Commander Gardner who prepared the memorandum recommending that plaintiff be penalized for disobeying a direct order.

The retaliation claims fail.

**4) Hostile Work Environment (Count Five)**

Count Five alleges a hostile work environment based on gender. To establish a *prima facie* hostile work environment claim, a plaintiff must show that: (1) he or she was a member of a protected class; (2) he or she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable. *Ennis v. State of Tennessee*, 835 Fed.Appx. 811 (6th Cir. 2020) (citing *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016)). Regarding the fifth element, where the harassment was allegedly perpetrated by co-workers, the plaintiff must show that the defendant knew or should have known about the harassment and failed to act. *Nathan v. Great Lakes Water Authority,* 992 F.3d 557 (6th Cir. 2021). The Sixth Circuit has recently outlined what is required in finding a hostile work environment:

> The conduct must be both subjectively and objectively severe and pervasive. The test is "(1) whether a reasonable person would find the environment objectively hostile, and (2) whether the plaintiff subjectively found the conduct 'severe or pervasive.' " *Williams v. Gen. Motors*, 187 F.3d 553, 568 (6th Cir. 1999). The conduct should be considered as a whole such that "even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation." *Id.* at 563. "Among the factors to be considered are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

*Scarbro v. Social Security Administration,* 841 Fed.Appx. 928 (6th Cir. 2021).

Plaintiff points to the following declaration testimony which she claims supports her assertion of a hostile work environment. During her time with the East Cleveland Police Department, she had to share a locker room with male co-workers who repeatedly bragged about their sexual experiences with women in her presence, and referred to women as "whores" and other "demeaning and vulgar sexist epithets." Plaintiff was told by a male co-worker that "either I'm going to f**k you, or I'm going to fight you." At a department holiday party, Michael Cardilli was intoxicated and attempted to force plaintiff into his car as he and officer Larry McDonald argued over which of them was going to take plaintiff home for sex. When Larry McDonald returned to the department in April 2018, he told plaintiff that he would not work under a female officer's direction, and "denigrated" plaintiff to school officials in an effort to undermine plaintiff's role as School Resource Officer. When plaintiff complained to Chief Cardilli about "McDonald's harassing behavior," Cardilli told plaintiff the department was a "boys club" and she should "just deal with it." (pltf. decl.).

Plaintiff argues that her claim is "based on the pervasive and egregious sexual

16

harassment she suffered throughout her career from her male co-workers including Larry McDonald and Chief Michael Cardilli." (Doc. 20 at 16).

For the following reasons, summary judgment is warranted on this claim. Assuming that the incidents and statements contained in plaintiff's declaration are true, the evidence does not show that the conduct was severe or pervasive so as to give rise to a claim of hostile work environment.

Plaintiff points to the locker room comments made by her male co-workers. It is well-settled that "Title VII does not create a "general civility code" and sporadic abusive language or offensive comments are not sufficient to support a claim." *Stewart v. Esper,* 815 Fed.Appx. 8 (6th Cir. 2020) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998). Additionally, the Sixth Circuit has recently reiterated that it has "repeatedly found" even "vulgar and overtly sexual" conduct to be insufficient to create a hostile work environment. *Scarbro v. Social Security Administration*, 841 Fed.Appx. 928 (6th Cir. 2021). In particular, the court noted:

> A few examples will suffice. In [*Clark v. United Parcel Serv., Inc*. 400 F.3d 341 (6th Cir. 2005)], we found that there was no hostile work environment where, over the course of two years, a male supervisor told sexual jokes, twice placed a vibrating pager against a female plaintiff's thigh and pulled on her overalls after she told him that she was wearing a thong underneath. 400 F.3d at 351. The court found that his behavior was "distasteful and boorish" but fell short of "being sufficiently pervasive, hostile, or abusive to support a legal claim of a hostile work environment." *Id*.
>
> In *Burnett v. Tyco Corp*., we found that a female employee was not subjected to a hostile work environment when over a six-month period her male manager placed a pack of cigarettes inside her tank top and bra strap, and made several lewd jokes, including telling the employee she had "lost [her] cherry." 203 F.3d 980, 981 (6th Cir. 2000). We concluded that even though the incident with the cigarettes might even be battery, the conduct as a whole was not sufficiently severe to create a hostile work environment. Id. at 984–85.

> In *Morris v. Oldham County Fiscal Court*, we found there was no objectively hostile work environment where a male supervisor told lewd jokes, made a sexual advance on the female plaintiff during her performance evaluation, referred to her once as "Hot Lips," and made several isolated comments about her appearance. 201 F.3d 784, 790 (6th Cir. 2000).

*Id.* at 933. Moreover, while plaintiff points to the one (undated) specific offensive comment by the male co-worker, the Sixth Circuit has rejected claims based on five specific instances of sex-based harassment over a fifteen-month period. *Nathan v. Great Lakes Water Authority*, 992 F.3d 557 (6th Cir. 2021). The court relied on *Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) (holding that a "a single battery coupled with two merely offensive remarks over a six-month period [did] not create an issue of material fact") and *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 708, 715 (6th Cir. 2007) (deciding that fifteen incidents of mostly "offensive utterances" over a two-year period were not severe or pervasive).

Plaintiff also cites to the incident involving Michael Cardilli and his attempt to force plaintiff into his car after a holiday party. Assuming plaintiff's declaration testimony to be true,[4] plaintiff offers no date as to when this occurred. But, plaintiff's declaration testimony states that the incident occurred before Cardilli became Chief of Police. (pltf. decl. ¶ 15). Cardilli's deposition testimony states that he became Chief of Police in March 2014. (Cardilli depo. at 7). Thus, at the earliest, this incident would have occurred in December 2013- five years before plaintiff was terminated. Moreover, while the incident may have been perceived by plaintiff to be "physically threatening or humiliating,"*Harris v. Forklift Syst., Inc.,* 510 U.S. 17 (1993), the Sixth Circuit has concluded that "three instances of physically invasive conduct, including a

---

[4] Cardilli's deposition testimony disputes plaintiff's version of the incident, and states that he was attempting to prevent plaintiff from driving home while intoxicated. (Cardilli depo. at 31-33).

18

supervisor's grabbing the plaintiff's buttocks and saying that 'she controlled [plaintiff's] ass and she would do whatever she wanted with it,' coupled with repeated unwanted sexual advances, did not constitute severe or pervasive harassment." *Nathan v. Great Lakes Water Authority*, 992 F.3d 557 (6th Cir. 2021) (quoting *Bowman v. Shawnee State University*, 220 F.3d 456 (6th Cir. 2000)).

Finally, plaintiff points to her declaration testimony that in 2018, Larry McDonald said he was not going to work under a female officer's direction, and he denigrated plaintiff to school officials. However, plaintiff does not dispute defendants' evidence that she did not complain to Chief Cardilli about sexual harassment, but that he was aware that plaintiff and McDonald had a "tiff" and did not like each other. (Cardilli depo. at 24-25). Cardilli testified that he had meeting with them in his office where he "told them they needed to work in conjunction with each other." (*Id.* at 25) And, Cardilli told plaintiff and McDonald that "they didn't have to like each other," but just to do their assignment. (*Id.*). Thus, plaintiff does not contradict evidence that defendants knew about the harassment but failed to act.

For these reasons, plaintiff's claim for a hostile work environment fails.

### 5) Aiding and Abetting (Count Six)

Count Six alleges that defendants Cardilli and McDonald aided and abetted, or compelled and coerced the City of East Cleveland to engage in discriminatory employment practices or prevented it from complying with the Ohio employment statute. Because none of the claims survive summary judgment, this claim fails as well.

### **Conclusion**

For the foregoing reasons, defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.

                                                /s/ Patricia A. Gaughan
                                                PATRICIA A. GAUGHAN
                                                United States District Court
                                                Chief Judge

Dated: 9/27/21